## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

|  |  |  |
|---|---|---|
| KESHA M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20cv616 |
| | ) | |
| KILOLO KIJAKAZI[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### REPORT AND RECOMMENDATION

Plaintiff Kesha M. ("Plaintiff") filed this action pursuant to 42 U.S.C. 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSDI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 11.

Presently before the Court are the parties' cross motions for summary judgment, ECF Nos. 16, 18. Plaintiff argues that the ALJ erred in finding that Plaintiff is "not disabled" because the

---

[1] On July 9, 2021, Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security, replacing former Commissioner of Social Security Andrew Saul. Accordingly, the Court substitutes Acting Commissioner Kilolo Kijakazi for Andrew Saul in this matter pursuant to Federal Rule of Civil Procedure 25(d).

ALJ did not properly account for her moderate pace limitations, and because the ALJ did not properly evaluation the opinion of two of Plaintiff's physicians. ECF No. 17 at 8–16.

After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 16, be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 18, be **DENIED**, the final decision of the Commissioner be **VACATED** and **REMANDED**.

## I. PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on July 13, 2018, alleging disability due to depression, anxiety, attention-deficit disorder, post traumatic stress disorder, back issue scoliosis, and arthritis. R. at 219, 223.[2,3] Plaintiff's applications for DIB and SSI were initially denied on September 25, 2018, and again denied upon reconsideration on December 14, 2018. R. at 103, 105, 139, 141. On February 1, 2019, Plaintiff requested a before an administrative law judge. R. at 173. Plaintiff appeared with counsel at the hearing, held before Administrative Law Judge Kerith Cohen ("the ALJ"), on January 30, 2020. R. at 42–80. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 47–79. On March 30, 2020, the ALJ issued a decision finding Plaintiff not disabled. R. at 12–29. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on October 8, 2020, making the ALJ's decision the final decision of the Commissioner. R. at 1–3, 7.

Having exhausted her administrative remedies, on December 9, 2020, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On April 12, 2021,

---

[2] "R." refers to the certified administrative record that was filed under seal on November 10, 2020, ECF No. 13, pursuant to Local Civil Rules 5(B) and 7(C)(1).

[3] Although the ALJ notes that Plaintiff filed for DIB and SSI on June 19, 2018, the record demonstrates that Plaintiff filed on July 13, 2018. *See* R. at 12, 219, 223.

Plaintiff filed a motion for summary judgment and accompanying brief in support. ECF Nos. 16, 17. On May 10, 2021, the Commissioner filed a motion for summary judgment and memorandum in support. ECF Nos. 18, 19. Plaintiff filed a reply on May 21, 2021. ECF No. 20. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

The Record included the following factual background for the ALJ to review:

Plaintiff was 35 years old at the time of her alleged disability onset date of May 1, 2017. R. at 81. Plaintiff previously worked as a customer service representative in call centers, a home health companion, and most recently, a hair dresser. R. at 26–27, 393. Plaintiff attempted to obtain a GED but ultimately did not complete the course, and subsequently went to school for hairdressing. R. at 47, 74, 393. At the time of the ALJ hearing, Plaintiff lived with her two children. R. at 46.

### A. Plaintiff's Medical Records Relevant to Her Alleged Mental Impairments[4]

Plaintiff began her mental health treatment with Christian Psychotherapy Services on September 19, 2016, to treat depression, anxiety and "emotional ups and downs." R. at 560. After an evaluation, Plaintiff was diagnosed with Major Depressive Disorder, Posttraumatic Stress Disorder, Attention-Deficit/Hyperactivity Disorder, and Borderline Personality Disorder. R. at 551–54. In subsequent visits, Plaintiff often presented with a depressed or anxious mood, and distracted concentration. *See e.g.,* R. at 564, 566, 568, 573. Plaintiff was prescribed medication to treat her anxiety and depression. R. 563–73. Plaintiff was eventually discharged from Christian Psychotherapy Services on July 16, 2018, for missing too many appointments. R. at 481.

---

[4] Because Plaintiff's physical impairments are not at issue, the Court does not address Plaintiff's medical records relating to her physical impairments.

Plaintiff then treated with Dr. Jeffery Morse for four months. R. at 617–28. Dr. Morse observed that Plaintiff appeared with anxiety, depression, and difficulty concentrating. R. at 618, 621, 624, 627. Dr. Morse increased Plaintiff's Saphris prescription, intended to improve her mood, and restarted Plaintiff on Zoloft, intended to decrease her anxiety. R. at 628. During subsequent visits, Dr. Morse observed that Plaintiff continued to experience anxiety, depression, and an inability to concentrate, but also observed that Plaintiff appeared alert, cooperative, and with appropriate judgment and insight. R. at 618, 621, 624, 627. During subsequent visits, Dr. Morse adjusted Plaintiff's medications, such as increasing Plaintiff's Zoloft dosage, and increasing Plaintiff's Xanax dosage. R. at 621, 625.

On November 15, 2018, Dr. Morse completed a medical source statement regarding Plaintiff's abilities. Dr. Morse denoted with a checkmark that Plaintiff experiences the following symptoms: anhedonia; appetite disturbance; disturbed mood; mood swings; decreased energy; difficulty with focus/concentration; isolation/emotional withdrawal; persistent anxiety; and anxiety attacks." R. at 629. Dr. Morse also noted that Plaintiff has "marked" limitations in the following abilities: carry out short/simple instructions; maintain concentration/focus; get along with the general public, co-workers, and supervisors; perform at a consistent pace; respond to changes in routine; and deal with normal work stress. R. at 630. Dr. Morse also denoted with a checkmark that Plaintiff would miss four or more days of work per month due to her mental health problems. R. at 630.

Plaintiff also saw Krista Grimmett, a certified Physician Assistant ("PA-C Grimmett"), from April 2019 until October 2019 for medication management. R. at 697–718. Plaintiff initially reported she had stopped taking Adderall because her schooling ended, but felt her symptoms were returning. R. at 696. PA-C Grimmett prescribed Plaintiff Adderall, and Plaintiff later reported

4

she felt it controlled her symptoms. R. at 698, 711. On mental status examination, PA-C Grimmett often found that Plaintiff had normal attention and appropriate concentration, and exhibited intact judgment. R. at 697, 705, 713, 717. Additionally, while Plaintiff initially presented sad and tearful, or irritable, R. at 697, 705, she later presented with a normal mood. R. at 713, 717.

On January 9, 2020, PA-C Grimmett completed a medical source statement regarding Plaintiff's abilities. R. at 734. PA-C Grimmett denoted with a checkmark that Plaintiff experiences the following symptoms: sleep disturbance; feelings of guilt/worthlessness; disturbed mood; mood swings; difficulty with focus/concentration; isolation/emotional withdrawal; persistent anxiety; racing thoughts; and paranoid thinking. R. at 734. PA-C Grimmett then found that Plaintiff had a mild limitation in her ability to carry out short/simple instructions; moderate limitations in her ability to get along with the general public, co-workers, and supervisors, and to perform at a consistent pace and respond to changes in routine; a marked limitation in her ability to respond to changes in routine; and extreme limitations in her ability to maintain concentration/focus, and deal with normal work stress. R. at 734–35. PA-C Grimmett also denoted with a checkmark that Plaintiff would miss four or more days of work per month due to her mental health problems. R. at 735.

### B. Relevant Mental Evaluations Completed by State Agency Examiners

Plaintiff underwent a consultative examination with Dr. Howard Bierenbaum on October 31, 2017. R. at 424–27. Dr. Bierenbaum noted that Plaintiff appeared sad and anxious. R. at 426. After performing a mental status examination, Dr. Bierenbaum found that Plaintiff "would likely be able to perform simple tasks, if problems with anxiety and depression were not to interfere. She likely would be able to perform simple and repetitive tasks with direction and supervision, although she could find dealing with the public in a work setting to be challenging." R. at 427.

5

Dr. Bierenbaum concluded that Plaintiff "might have moderate difficulty successfully completing a normal work day or work week and interacting with co-workers and the public because of the problems cited above." R. at 427.

In September 2018, at the initial level of review, state agency psychological consultant Jo McClain, Psy.D., performed a consultative review of Plaintiff's medical records. R. at 87–89. Dr. McClain found that Plaintiff was no more than moderately limited in all areas of mental functioning. R. at 88–89. Specifically, Dr. McClain found that Plaintiff would: have difficulty with detailed instructions, but could perform simple, routine, repetitive work in a stable environment; have difficulty with maintaining concentration for extended periods of time but could make simple decisions and could persist in simple tasks for two-hour blocks in a normal workday; have difficulty with interacting with large groups of people or responding to criticism, but could ask simple questions and accept instruction; and would have difficulty with changes in the work setting but would be able to make simple decisions. R. at 88–89.

In December 2018, at the reconsideration level of review, state agency psychological consultant Leslie Montgomery, Ph.D., A.B.P.P., generally agreed with Dr. McClain's assessment, finding it was consistent with and supported by the objective medial evidence. R. at 119. She further explained that Plaintiff's anxiety and depression limits her to tasks that: require little or no judgment; involve simple duties in standardized situations with minimal variations; and that generally require dealing with things rather than people. R. at 118–19.

## C. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff explained that she goes to therapy once per week, and attends an appointment for medication management between every three to four weeks. R. at 58. Plaintiff testified that she often feels overwhelmed, does not like to be around many people, and that feels

angry, irritable, and sad. R. at 59. Plaintiff further testified that she has a life coach who comes to her home Monday through Thursday to help her with daily tasks for about four or five hours per day. R. at 60, 64. Without her life coach prompting her, Plaintiff stated that she would not be able to complete daily tasks around her home, such as laundry. R. at 65. Plaintiff also explained that she experiences panic attacks, and has difficulty getting along with others. R. at 68–71. Finally, Plaintiff explained that she has difficulty sleeping at night as she wakes up frequently and has nightmares. R. at 73–74.

## III. THE ALJ'S DECISION

The ALJ conducts a five-step sequential evaluation process to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. §§ 404.1545(a), 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of May 1, 2017. R. at 14. At step two, the ALJ found that Plaintiff had the following severe impairments: posttraumatic stress disorder, generalized anxiety disorder, major depressive disorder, obsessive-compulsive disorder, bipolar I disorder; attention deficit hyperactivity disorder, learning disorder in reading and math; hypertension; mild scoliosis and osteoarthritis of the lumbar spine; and obesity. R. at 15.

At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 16–21. Specifically, the ALJ considered Listing 1.00 for the musculoskeletal system, Listing 4.00 for the cardiovascular system, and Listing 12.00 for Mental Disorders. R. at 16. Relevant to the instant matter, in evaluating Listing 12.00, the ALJ specifically examined the criteria for listings 12.04, 12.06, 12.11, and 12.15, and whether "paragraph B" criteria—intended to evaluate Plaintiff's abilities in the four areas of mental functioning—was met, or whether "paragraph C" criteria— intended to evaluate serious and persistent mental disorders—was met. R. at 16. Ultimately, the

ALJ concluded that because Plaintiff's mental impairments did not "cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria were not satisfied." R. at 20. The ALJ also concluded that because Plaintiff's mental disorders are not serious and persistent, the "paragraph C" criteria were not satisfied. R. at 20.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work, with the following limitations:

> She can understand, remember, and follow simple instructions and perform simple routine tasks for two-hour increments in a non-production pace workplace. She can occasionally interact with the public, co-workers, and supervisors while performing work tasks. She can adapt to and manage a low-stress environment, defined as one that requires only occasional decision-making and occasional changes in work setting.

R. at 22. In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR § 404.1529 and 416.929 and SSR 16-3p." R. at 22. The ALJ also "considered any medical opinions and prior administrative medical findings in accordance with the requirements of 20 CFR 404.1520c and 416.920c." R. at 22.

Specifically, the ALJ detailed each area of "paragraph B" mental functioning and explained how Plaintiff's RFC addressed that area of mental functioning. R. at 24. The ALJ then considered the nonmedical evidence such as Plaintiff's past work history, and all the medical opinions and prior administrative findings in the record. R. at 24. The ALJ explained that she found Drs. Bierenbaum's, Dr. Morse's, and PA-C Grimmett's opinions unpersuasive, but found the state agency psychological consultant's opinions persuasive. R. at 25–26.

At step four, the ALJ determined that Plaintiff was incapable of performing her past relevant work as a hairdresser, which is considered light, skilled work. R. at 26. While Plaintiff cannot resume her prior employment, the ALJ determined at step five that Plaintiff could perform

other jobs that exist in significant numbers in the national economy. R. at 27.    Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date, May 1, 2017, through the date of the decision, March 30, 2020. R. at 28–29.

## IV. <u>STANDARD OF REVIEW</u>

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Britt v. Saul*, No. 19-2177, 2021 WL 2181704, at *2 (4th Cir. May 28, 2021) (quoting *Craig*, 76 F.3d at 589).  The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.  If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).  Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises two challenges to the ALJ's decision.  First, Plaintiff alleges that the ALJ erred by failing to define the non-production rate pace limitation in Plaintiff's RFC.  ECF No. 17 at 8–13.  Second, Plaintiff alleges that the ALJ erred in evaluating two of Plaintiff's doctors' opinions regarding Plaintiff's mental impairments.  ECF No. 17 at 13–15.

### A. The ALJ Erred by Failing to Define "Non-Production Pace" in Plaintiff's RFC.

Plaintiff contends that when a non-production rate pace is used in the RFC, the ALJ must define what "non-production rate pace" means, and if the ALJ does not do so, the ALJ must address a pace limitation elsewhere in the RFC.  ECF No. 17 at 8–13.  In response, the Commissioner argues that the ALJ's RFC explanation sufficient explains the types of tasks Plaintiff can perform, and under what conditions Plaintiff could perform those tasks.  ECF No. 19 at 12, 16–19.

If an ALJ finds that a claimant has a moderate impairment in concentration, persistence, and pace, the ALJ generally must account for those limitations in the claimant's RFC, or explain why such limitations are not required.  *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) (remanding case because an ALJ does not account for moderate limitations in concentration, persistence, and pace by limiting a claimant's RFC to simple, routine tasks or unskilled work); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2021) (remanding because ALJ found moderate limitation in concentration, persistence, and pace, but failed to include any corresponding limitations in the claimant's RFC without a sufficient explanation why corresponding limitations were not required).

ALJs have attempted to accounted for pace limitations when formulating residual functional capacities by addressing a rate of "production" that is suitable for the claimant.  However, the Fourth Circuit has expressed skepticism regarding pace limitations that contain language about a "non-production" pace, and have required that ALJs either define that phrase or

11

provide sufficient context for the phrase to allow the court to meaningfully evaluate whether it adequately addresses moderate impairments involving pace. *See, e.g., Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019); *Perry v. Berryhill*, 765 F. App'x 869, 870 (4th Cir. 2019).

In *Thomas*, the Fourth Circuit remanded a case where the ALJ stated a residual functional capacity that the claimant "could not perform work 'requiring a production rate or demand pace'" because the ALJ did not provide sufficient information for the court to understand the meaning of those terms. 916 F.3d at 312. Similarly, in *Perry*, the Fourth Circuit explained that it was "difficult, if not impossible" for the court to determine whether a "non-production oriented work setting" properly accounts for limitations in concentration, persistence, and pace, because there is no regulatory definition for the phrase, nor is it commonly used or otherwise self-explanatory. *Id.* at 872 (citing *Thomas*, 916 F.3d at 312). The Fourth Circuit in *Perry* distinguished a previous Fourth Circuit decision, *Sizemore v. Berryhill*, 878 F.3d 72 (4th Cir. 2017), that found no error when an ALJ found a claimant had the RFC to work in a "low stress setting defined as non-production jobs [without any] fast-paced work [and] with no public contact," because those descriptors helped explain the non-production phrase, and allowed the court to evaluate whether that phrase adequately accounted for the claimant's limitations. *Perry*, 765 F. App'x at 873 n.1. Accordingly, if an ALJ addresses a moderate pace impairment using phrases about a production pace, the ALJ must either define or provide context for that phrase, or otherwise address pace with another limitation so that the Court can meaningfully review the ALJ's decision.

Applying these principles, this court, and other courts in this district have similarly held that limitations that restrict a plaintiff's interactions with others, or limitations to work involving simple, routine, tasks, often fail to sufficiently contextualize a "production pace" limitation. *See e.g., Xavier S. v. Saul*, No. 1:19CV1195, 2020 WL 1015816, at *23–27 (E.D. Va. Mar. 2, 2020)

(holding that plaintiff's limitation in interacting with others, limitation to jobs with no more than occasional changes in setting and occasional decision-making, and jobs involving simple routine tasks did not sufficiently contextualize the production limitation in plaintiff's RFC); *Allison L.S. v. Saul*, No. 4:20cv45, ECF No. 17 (E.D. Va. June 28, 2021) (finding non-production rate pace was not defined either directly or through the context of RFC), *report and recommendation adopted*, ECF No. 18 (June 29, 2021).

In contrast, courts have found no error where the ALJ sufficiently explains a pace-related production limitation by providing sufficient context for the limitation. For example, in *John S. v. Saul*, the court upheld a production limitation where the ALJ explained that the plaintiff "cannot perform work that is 'fast-paced' and based on 'production quotas' but is able to perform 'goal oriented' work in a 'low stress environment.'" No. 1:20CV835, 2021 WL 1724930, at *4 (E.D. Va. Apr. 29, 2021). There, the court found that the ALJ's distinction between "work requiring fast-paced production quotas" and "goal-oriented work" explained the ALJ's meaning and intent. *Id.* Further, courts have found no error where the ALJ provides a pace-related production limitation and clarifies the limitation in the hypothetical question to the vocational expert. *Roman T. v. Saul*, No. 7:19-CV-159, 2020 WL 4233104, at *6 (W.D. Va. Mar. 19, 2020) (upholding ALJ's decision where ALJ limited plaintiff to jobs "without strict production rate or pace requirements" because ALJ's instructed the VE to "eliminate those jobs that have a strict production rate or pace requirement whether that's keeping up with a factory assembly line or having to make a certain number of widgets every hour or day" and that instruction sufficiently contextualized the production limitation), *report and recommendation adopted*, No. 7:19-CV-00159, 2020 WL 4227561 (W.D. Va. July 23, 2020).

Here, at step three, the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace. R. at 19. The ALJ found that "it is reasonable that [claimant] would have some issues with her ability to work at an appropriate and consistent pace; complete tasks in a timely manner; ignore or avoid distractions while working; or change activities or work settings without being disruptive." R. at 19. After declaring Plaintiff's RFC, the ALJ further detailed Plaintiff's mental impairments and how such impairments affect her RFC. R. at 23–24. The ALJ explained that because of Plaintiff's moderate limitations in concentration, persistence, and pace, "she can understand, remember, and follow simple instructions and perform simple routine tasks for two-hour increments in a non-production pace workplace." More importantly, the ALJ explained that the limitation to performing simple routine repetitive tasks in two-hour increments was set "to account for the deficit in concentration and persistence" and specifically, the limitation to no production-pace work was set "to account for the moderate limitation with pace." R. at 24.

In this case, the ALJ did not sufficiently define the term "non-production pace workplace" in a manner that allows the Court to conduct a meaningful assessment of whether a logical bridge exists between the evidence and the ALJ's RFC assessment. The ALJ here specifically explained that limiting Plaintiff to simple, routine, repetitive tasks in two-hour increments was intended to account for Plaintiff's limitations in concentration and persistence, and limiting Plaintiff to a "no-production pace workplace" was intended to account for Plaintiff's moderate limitation in pace. Thus, by the ALJ's own language, Plaintiff's limitation to simple, routine, repetitive tasks in two-hour increments cannot modify Plaintiff's restriction to a "no-production pace workplace." Nor do the ALJ's other restrictions, such as a low-stress environment, provide the necessary context to define no-production pace workplace. *See* R. at 24. Although the ALJ notes that the restriction to a low stress environment defined as one requiring only occasional decision-making and occasional

14

changes to work setting also relates to her limitation in concentration, persistence, and pace, under these circumstances, it is not entirely clear how that environment would account for the pace of her work and her ability to stay on task, as opposed to her ability to concentrate and persist, and how that would affect a "no-production pace" work environment. *See Mascio*, 780 F.3d at 638 (noting that "the ability to perform simple tasks differs from the ability to stay on task" and "[o]nly the latter would account for a claimant's limitation in concentration, persistence[,] or pace."). Under these circumstances, the Court cannot understand what "no-production pace" workplace means, or whether it sufficiently accounts for Plaintiff's moderate limitation in pace. Accordingly, the Court cannot meaningfully review whether that limitation adequately accounts for Plaintiff's limitations with pace.[5]

## B. The ALJ Did Not Err in Evaluating Plaintiff's Mental Provider's Opinions.

Plaintiff also argues that the ALJ erred in evaluating two of Plaintiff's mental provider's opinions—Dr. Morse, and Physician Assistant Krista Grimmett. ECF No. 17 at 14–15. Plaintiff specifically contends that the ALJ erred in evaluating Dr. Morse's opinion because the ALJ should have adopted Dr. Morse's opinion that Plaintiff had "marked" impairments as to carrying out short or simple instructions, maintaining concentration or focus, performing at a consistent pace, dealing with changes in routine, dealing with normal stress, and getting along with co-workers, supervisors, and the general public. ECF No. 17 at 14. Plaintiff further contends that if the ALJ

---

[5] The undersigned's conclusion is buttressed by the Fourth Circuit's admonition that "'Administrative determinations are required to be made in accordance with certain procedures which facilitate judicial review.' We cannot fill in the blanks for the ALJ in the first instance." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). "Filling in the blanks" in the ALJ's decision is literally what the Commissioner is asking the Court to do, when, in discussing the ALJ's explanation purporting to provide context for the pace limitation, notes that "the ALJ's sentence appears to be missing the introductory piece." ECF No. 19 at 14. The Commissioner then goes on to "fill in the blank" as to what the ALJ must have meant, thereby supposedly providing the missing context to explain "non-production pace" work. This additional ambiguity in the ALJ's decision merely reinforces the problem with failing to define the disputed term.

adopted Dr. Morse's opinion, Plaintiff would have met Listing 12.04 at step three and determined disabled. *Id.* As for PA-C Grimmett, Plaintiff contends that the ALJ should have adopted PA-C Grimmett's opinion that Plaintiff had an extreme impairment with maintaining concentration or focus and dealing with normal work stress, and a marked impairment as to responding to changes in routine. *Id.* Plaintiff similarly contends that had the ALJ adopted PA-C Grimmett's opinions, Plaintiff would have met Listing 12.04 at step three and determined disabled. *Id.* In response, the Commissioner argues that the ALJ applied the correct legal standards and substantial evidence sufficiently supports the ALJ's decision to find Dr. Morse's opinion and PA-C Grimmett's opinion unpersuasive. ECF No. 19 at 22–26.

Under the SSA regulations[6], the ALJ must consider each medical opinion in the record and articulate how persuasive they find the medical opinion based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion. §§ 404.1520c(b), (c)(1)–(5), 416.920c(b), (c)(1)–(5). Supportability and consistency are "the most important factors" in determining the persuasiveness of a medical opinion, and accordingly, the ALJ must explain how he or she considered those factors in the written decision. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinion[]" will be. §§ 404.1520c(c)(1), 416.920c(c)(1). As for consistency, "[t]he more consistent a medical opinion[]" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion[]" will be. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ may explain how they

---

[6] Because this matter involves a claim filed after March 27, 2017, the revised regulations regarding the evaluation of medical opinions set forth in Section 404.1520c apply in this case. Under the new rules, applies in this case. Under the new regulations, ALJs no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." § 404.1520c(a).

considered the other factors, including the medical source's relationship with the claimant, but are only required to do so when contradictory medical opinions regarding the same issue are equally supported by and consistent with the record. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3). If medical opinions regarding the same issue are equally supported by and consistent with the record, the ALJ must articulate the other factors and consider their impact on the persuasiveness of the medical opinions. §§ 404.1520c(b)(3), 416.920c(b)(3).

1. *The ALJ Properly Evaluated Dr. Morse's Opinion and the ALJ's Evaluation is Supported by Substantial Evidence.*

The ALJ considered Dr. Morse's opinion that Plaintiff has marked limitations in all areas of mental functioning, and that Plaintiff would miss four or more days of work per month, and concluded that the opinion was not persuasive. R. at 25. The ALJ explained,

> Dr. Morse's opinion "is only somewhat consistent with the treatment notes of this provider...but not very consistent with the less severe findings elsewhere in the record. There is no evidence of responses to internal stimuli. She was cooperative and had normal thought content. Moreover, Dr. Morse does not have a longitudinal history of treatment of the claimant. He treated her for only four months. Subsequent treatment notes show less limiting symptoms.

R. at 25. The ALJ considered the supportability factor by explaining that Dr. Morse's supported his limitation opinion with his findings that Plaintiff has "anhedonia; appetite disturbance; disturbed mood; mood swings; decreased energy; difficulty with focus or concentration; isolation or emotional withdrawal; persistent anxiety; and anxiety attacks." R. at 23. However, the ALJ articulated that Dr. Morse's opinion was not well supported because Dr. Morse merely filled out a checkbox form of Plaintiff's symptoms, and those symptoms are only somewhat supported by his own treatment notes. R. at 23. In further considering supportability and consistency together, the ALJ noted that Dr. Morse's notes and other evidence demonstrated that Plaintiff was cooperative and had normal thought content. R. at 23. As for the consistency factor, the ALJ noted that

subsequent treatment notes after Plaintiff's visits with Dr. Morse demonstrate less limiting symptoms than those Dr. Morse opined. R. at 23. Although not required, the ALJ also articulated his consideration of the treatment relationship between Plaintiff and Dr. Morse, and noted that Dr. Morse only treated Plaintiff for four months. R. at 23. Thus, the ALJ properly evaluated the persuasiveness of Dr. Morse's opinion by articulating that it was only somewhat supported by Dr. Morse's treatment notes, and not consistent with other medical evidence in the record.

The ALJ's evaluation of Dr. Morse's opinion is also supported by substantial evidence. In the four months that Dr. Morse treated Plaintiff, he only saw her for four visits. R. at 617–28. Dr. Morse's treatment notes show that Plaintiff experience anxiety, depression, irritation, hallucinations, difficulty concentrating, panic attacks, paranoia, suicidal ideation, and trouble falling asleep. R. at 618, 621, 624, 6274. Nonetheless, they also show that Plaintiff was oriented, cooperative, and demonstrated appropriate judgment and insight. R. at 618, 621, 624, 627. Additionally, there is evidence in the record that Plaintiff's symptoms were less limiting after her visits in 2018 with Dr. Morse. *See e.g.*, R. at 697 (noting logical thought process, and normal attention and concentration), 705 (noting a normal mood and thought process, cooperative demeanor, and normal attention and appropriate concentration), 711 (noting Plaintiff has lack of focus once and awhile but believes Adderall controls symptoms); 715 (noting normal mood, cooperative nature, normal thought content, and appropriate concentration). Accordingly, the ALJ's evaluation of Dr. Morse's opinion is supported by substantial evidence.[7]

---

[7] To the extent Plaintiff argues that the ALJ should have found that Plaintiff met Listing 12.04 at step three because Dr. Morse found that Plaintiff had at least two "marked" impairments, that argument is without merit because, as explained above, the ALJ's evaluation of Dr. Morse's opinion was legally correct and supported by substantial evidence. *See* ECF No. 17 at 14.

2.  *The ALJ Properly Evaluated PA-C Grimmett's Opinion, and the ALJ's Evaluation is Supported by Substantial Evidence.*

The ALJ considered PA-C Grimmett's opinion that Plaintiff has extreme limitations in maintaining concentration/focus, and dealing with normal work stress, marked limitations in responding to changes in routine, and moderate limitations in interacting with others and performing at a consistent pace, and that Plaintiff would miss four or more days per month. R. at 25 (citing R. at 734–35). The ALJ concluded that PA-C Grimmett's opinion was not persuasive. R. at 25. The ALJ explained that PA-C Grimmett's opinion was partially supported since Plaintiff experienced "sleep disturbance, feelings of guilt and/or worthlessness; disturbed mood; mood swings; difficulty with focus or concentration; isolation or emotional withdrawal; persistent anxiety; anxiety attacks; racing thoughts; and paranoid thinking." R. at 25. However, the ALJ ultimately determined that PA-C Grimmett's opinion was "inconsistent with the generally normal mental status examinations ground by Ms. Grimmett herself. Her findings, for example, regarding thought content were unremarkable. She also found the claimant to be cooperative." R. at 25. The ALJ found that PA-C Grimmett's findings "do not supported marked or extreme limitations." R. at 25.

The ALJ considered the supportability and consistency factor by explaining that PA-C Grimmett's opinion was supported by some of the symptoms she observed during her treatment with Plaintiff, but that such extreme limitations were not consistent with generally normal mental status examinations, and treatment notes showing appropriate thought content and Plaintiff's cooperation with her treatment. R. at 25. Further, the ALJ explained that Plaintiff's mental health records do demonstrate some difficulties with maintaining concentration and focus, dealing with normal work stress, and responding to changes in routine, but those difficulties are not marked or

19

extreme. R. at 17. The ALJ explained that PA-C Grimmet's findings about Plaintiff's marked and extreme limitations were inconsistent with her treatment notes, which were predominantly normal other than some evidence of fair affect and irritable mood. R. at 17. Although some findings by Dr. Morse were more serious in 2018, the ALJ found those records less notable because the treatment period only covered four months. R. at 17. Thus, the ALJ did not err in evaluating PA-C Grimmett's opinion.

The ALJ's evaluation of PA-C Grimmett's opinion is also supported by substantial evidence. Although PA-C Grimmett opined that Plaintiff experienced a number of symptoms mental impairments, she often found that Plaintiff had generally normal mental status evaluations. *See e.g.*, R. at 697 (noting Plaintiff had logical thought process, normal attention); 705 (noting Plaintiff's mood is normal and she had normal attention and appropriate concentration); 713 (same); 717 (same). Accordingly, the ALJ's evaluation of PA-C Grimmett's opinion is supported by substantial evidence.[8]

## VI. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 16, be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 18, be **DENIED**, the final decision of the Commissioner be **VACATED** and **REMANDED**.

---

[8] To the extent Plaintiff argues that the ALJ should have found that Plaintiff met Listing 12.04 at step three because PA-C Grimmett found that Plaintiff had at least one "extreme" limitation, that argument is without merit because, as explained above, the ALJ's evaluation of PA-C Grimmett's opinion was legally correct and supported by substantial evidence. See ECF No. 17 at 14.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 15, 2021